**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 4 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF PHOENIX, | No.    16-16767 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-00511-NVW |
| v. | |
| FIRST STATE INSURANCE COMPANY, a foreign insurer; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Submitted February 14, 2018**
San Francisco, California

Before:  KLEINFELD and TALLMAN, Circuit Judges, and JACK,*** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Janis Graham Jack, United States District Judge for
the Southern District of Texas, sitting by designation.

The City of Phoenix ("the City") appeals an adverse summary judgment in favor of First State Insurance Company, Twin City Fire Insurance Company, New England Reinsurance Corporation, and Nutmeg Insurance Company (collectively, "Hartford")[1] on the City's declaratory judgment, breach of contract, and bad faith claims, and from the denial of the City's motion for partial summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

The City's insurance coverage action against Hartford arose from an underlying personal injury and wrongful death lawsuit brought by Carlos Tarazon and his wife. Mr. Tarazon was exposed to asbestos through his work as an underground pipe layer in the City from 1968 to 1993 and died of mesothelioma in 2014. The City settled the Tarazon family's claims against it for $500,000. The City's legal defense expenses amounted to over $1,400,000.

From July 1, 1981 to July 1, 1985, the City was covered by four successive excessive liability policies ("Excess Policies") issued by Hartford, each of which provided $500,000 in liability coverage in excess of a $500,000 self-insured retention ("SIR"). The City also purchased three successive umbrella policies ("Umbrella Policies") from Hartford, covering periods from July 1, 1981 to July 1, 1984.

---

[1] The named Appellees are all affiliates of The Hartford Financial Services Group.

1.     The Excess Policies' basic insuring agreement states that Hartford "will indemnify the [City] for ultimate net loss in excess of the retained limit [of $500,000.]" "Ultimate net loss" is defined in the Excess Policies to "exclude[] all loss adjustment expenses . . . ." The parties agree that defense costs are "loss adjustment expenses." The plain language of this provision is unambiguous. *See Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982) (en banc) (an insurance policy's provisions "are to be construed in a manner according to their plain and ordinary meaning"). Hartford only has to indemnify the City if the City's ultimate net loss (*i.e.,* not including defense costs) exceeds $500,000. *See Pac. Emp'rs Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276–77 (9th Cir. 1998). The City settled its claim for $500,000 and is not entitled to indemnity.

The Excess Policies also contain a "No Costs" provision, which states:

> Should any claim arising from such occurrence be adjusted prior to trial court judgment for a total amount not more than the retained limit, then no loss expenses or legal expenses shall be payable by the Company(s).

Again, because the City settled its claim within the retained limit, the plain language of the policy precludes it from receiving defense costs from Hartford.

The City attempts to inject ambiguity into the No Costs provision by arguing that use of the term "adjusted" includes both liability and defense costs, and defense costs therefore erode the SIR. However, this reading would contradict the language from the basic insuring agreement, which clearly provides that Hartford's

3

duty to indemnify applies when the retained limit is exhausted by liability costs. We are also persuaded by *City of Oxnard v. Twin City Fire Insurance Co.*, which examined an insurance policy with similar policy language, and likewise concluded that the insured "was responsible for defense costs for claims it settled within its SIR amount." 44 Cal. Rptr. 2d 177, 180 (Cal. Ct. App. 1995).[2]

2.    The City argues in the alternative that if Hartford is not obligated to pay the City under the Excess Policies, Hartford must pay under the Umbrella Policies. The Umbrella Policies provide that Hartford will indemnify the City "for ultimate net loss in excess of the underlying limit or the [SIR], whichever is the greater . . . ." The Umbrella Policies define "underlying limit" as the "limits of liability of the underlying insurance . . . ." Each Umbrella Policy's Schedule of Underlying Policies lists an Excess Policy and states that the Excess Policy's limit of liability is $500,000 in excess of the $500,000 SIR. Where no underlying insurance applies, the Umbrella Policies have a separate SIR of $10,000 or $25,000, depending on the policy year.

Because the City's asbestos liability fell within the scope of the Excess Policies, the City is only entitled to "ultimate net loss in excess of the underlying limit . . . ." As the City did not exhaust the underlying limit of the Excess Policies,

---

[2] Because we agree with the district court's interpretation of the Excess Policies, we need not reach the issue of pro rata allocation.

4

it is not entitled to indemnity under the Umbrella Policies. *See Garmany v. Mission Ins. Co.*, 785 F.2d 941, 948 (11th Cir. 1986) (explaining the dual nature of a typical umbrella policy). Moreover, the City's argument that it is entitled to defense costs under the Umbrella Policies fails for the same reason it is not entitled to defense costs under the Excess Policies.

3. Because we find that Hartford was justified in refusing to indemnify the City, we decline to review the City's bad faith claim. The City conceded below that it could not show bad faith if Hartford's refusal to pay out on the policies was justified. *See United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978).

4. The district court excluded "much of" the City's expert testimony because it "assert[ed] legal principles, reache[d] legal conclusions, or assert[ed] facts contrary to or unsupported by the record on these motions." This was not an abuse of discretion. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008).

Costs for this appeal are awarded to Appellees. *See* Fed. R. App. P. 39(a)(2).

**AFFIRMED.**